Citation Nr: 1730445 
Decision Date: 07/06/17 Archive Date: 08/09/17

DOCKET NO. 13-19 684 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia


THE ISSUES

1. Whether new and material evidence has been received to reopen service connection for posttraumatic stress disorder (PTSD). 

2. Whether new and material evidence has been received to reopen service connection for hepatitis C. 

3. Entitlement to service connection for an acquired psychiatric disorder, to include PTSD and depression. 

4. Entitlement to service connection for hypertension.

5. Entitlement to service connection for substance abuse. 

6. Entitlement to service connection for hepatitis C. 

7. Entitlement to service connection for headaches.


8. Entitlement to service connection for a right eye disorder. 

9. Entitlement to service connection for a left eye disorder. 

10. Entitlement to service connection for right ear hearing loss. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

A. Tenney, Associate Counsel 


INTRODUCTION

The Veteran, who is the appellant, had active service from December 1972 to December 1974. This matter came before the Board of Veterans' Appeals (Board) on appeal from a December 2010 rating decision of the RO in Roanoke, Virginia. 

In order to encompass all claimed symptoms of disability, the Board has broadened and reframed the psychiatric disorder issue on appeal to entitlement to service connection for a psychiatric disorder, to include PTSD and depression, in accordance with the United States Court of Appeals for Veterans Claims' (Court) decision in Clemons v. Shinseki, 23 Vet. App 1 (2009) (finding that a claim for benefits for one psychiatric disability also encompassed benefits based on other psychiatric diagnoses and should be considered by the Board to be within the scope of the filed claim).

The Veteran testified at a January 2016 Board Videoconference hearing at the RO before the undersigned Veterans Law Judge, who was seated in Washington, DC. The hearing transcript has been associated with the record.


FINDINGS OF FACT

1. A July 2003 rating decision denied service connection for PTSD, finding no clear diagnosis and no evidence of record linking any psychiatric disorder to service. The Veteran did not file a timely notice of disagreement (NOD) following the July 2003 decision, and no new and material evidence was received during the one year appeal period following the decision. 

2. The evidence received since the July 2003 rating decision relates to an unestablished fact of a current PTSD diagnosis that could reasonably substantiate a claim of service connection for an acquired psychiatric disorder. 

3. A September 2007 rating decision denied service connection for hepatitis C, finding no evidence of record linking any liver disorder to service. The Veteran did not file a timely NOD following the September 2007 decision, and no new and material evidence was received during the one year appeal period following the decision. 

4. The evidence received since the September 2007 rating decision relates to an unestablished fact of a causal relationship between the currently diagnosed hepatitis C and service. 

5. The Veteran is currently diagnosed with PTSD, depressive disorder, hepatitis C, hypertension, a substance abuse disorder, headaches, and bilateral dry eyes. 

6. An in-service stressor sufficient to cause PTSD has not been verified. 
7. The Veteran did not sustain an injury or event related to an acquired psychiatric disorder during service. 

8. There is no current psychiatric disability causally or etiologically related to service. 

9. Hypertension did not have its onset in service, become chronic in service or exhibit continuous symptoms since service, did not manifest to a compensable degree within a year of service separation, and is not causally or etiologically related to service. 

10. The Veteran's substance abuse is the result of willful misconduct.

11. Hepatitis C was not shown in service and is not related to any incident of service. 

12. The current headache disorder had its onset many years after service and is unrelated to service.

13. There was no in-service eye injury or disease. 

14. The currently diagnosed bilateral eye disorder is not related to service. 

15. The Veteran was exposed to acoustic trauma (loud noise) during service.

16. The Veteran does not have a current disability of right ear hearing loss for VA compensation purposes. 







CONCLUSIONS OF LAW

1. The July 2003 rating decision denying service connection for PTSD became final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 20.302, 20.1103 (2016).

2. Evidence received since the July 2003 rating decision is new and material to reopen service connection for PTSD. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. 
§ 3.156 (2016).

3. The September 2007 rating decision denying service connection for hepatitis C became final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 20.302, 
20.1103 (2016).

4. Evidence received since the September 2007 rating decision is new and material to reopen service connection for hepatitis C. 38 U.S.C.A. § 5108 (West 2014); 
38 C.F.R. § 3.156 (2016).

5. The criteria for service connection for a psychiatric disorder, to include PTSD, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.301, 3.303, 3.304, 3.326, 4.125 (2016).

6. Hypertension was not incurred in active service and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309,
3.326 (2016).

7. The criteria for service connection for substance abuse have not been met. 
38 U.S.C.A. §§ 105, 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.301, 3.303, 3.326(a) (2016).

8. The criteria for service connection for hepatitis C have not been met. 
38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.326(a) (2016).

9. The criteria for service connection for headaches have not been met. 
38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).

10. The criteria for service connection for a right eye disorder have not been met. 
38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.159, 3.303 (2016). 

11. The criteria for service connection for a left eye disorder have not been met. 
38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.159, 3.303 (2016). 

12. The criteria for service connection for right ear hearing loss have not been met. 
38 U.S.C.A. §§ 1110, 1112, 1113, 1154, 5103, 5103(a), 5107 (West 2014); 
38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304(d), 3.307, 3.309, 3.326, 3.385 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

The Veterans Claims and Assistance Act of 2002 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2016). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and 
(5) effective date of the disability. 

In addition, in Kent v. Nicholson, 20 Vet. App. 1 (2006), the Court held that, in the context of an application for reopening, VCAA notice (1) must notify a claimant of the evidence and information that is necessary to reopen the claim and (2) must notify the claimant of the evidence and information that is necessary to establish entitlement to the underlying benefit sought by the claimant. Id. at 11-12. The Court elaborated that VA is required, in response to an application to reopen, to look at the bases for the denial in the prior decision and send a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial. 

June 2010 and June 2011 VCAA notices informed the Veteran of the evidence generally needed to support a claim for service connection, what constitutes new and material evidence, why service connection for PTSD and hepatitis were denied and what new and material evidence would be necessary to reopen the claim, what actions the Veteran needed to undertake, and how VA would assist in developing the claim. The June 2010 and June 2011 VCAA notices were issued to the Veteran prior to the relevant rating decision on appeal; therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Regarding the duty to assist in this case, the Veteran received VA examinations in July 2008 and January 2011. A July 2015 VA audiometric examination has also been provided to measure the severity of hearing loss, and the Veteran has been notified throughout the appeal and at the Board hearing that the evidence must show current hearing loss disability before service connection may be granted. See 
38 C.F.R. § 3.655. The VA examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The record reflects that the July 2008 and January 2011 VA examiners and the July 2015 VA audiologist reviewed the record, conducted in-person examinations, and rendered the requested opinions. As such, VA has satisfied its duties to notify and assist the Veteran, and the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. 
§ 5103(a), § 5103A, and 38 C.F.R. § 3.159. 

Reopening Service Connection for PTSD and Hepatitis C

Generally, when a claim is disallowed, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered. 38 U.S.C.A. § 7105. However, pursuant to 38 U.S.C.A. § 5108, if new and material evidence is presented or secured with respect to a claim which has been disallowed, the VA Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence is defined as existing evidence not previously submitted to agency decision makers. Material evidence is defined as existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). In determining whether evidence is "new and material," the credibility of the new evidence must be presumed. 
Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 
24 Vet. App. 110, 117 (2010). Furthermore, in determining whether this low threshold is met, VA should not limit its consideration to whether the newly received evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA Secretary's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118.

Regardless of the RO's determination as to whether new and material evidence had been received, the Board must address the issue of the receipt of new and material evidence in the first instance because it determines the Board's jurisdiction to reach the underlying claims and to adjudicate the claims de novo. See Woehlaert v. Nicholson, 21 Vet. App. 456, 460-61 (2007) (citing Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996)). If the Board determines that the evidence submitted is both new and material, it must reopen the case and evaluate the claim in light of all the evidence. Justus v. Principi, 3 Vet. App. 510, 512 (1992). Such evidence is presumed to be credible for the purpose of determining whether the case should be reopened; once the case is reopened, the presumption as to the credibility no longer applies. Id. at 513.

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 
506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred.

To support a finding that the Veteran contracted hepatitis C in service, it must be shown that he or she was exposed to one of the medically recognized risk factors for contracting hepatitis C during that time. Risk factors include intravenous (IV) drug use, blood transfusions before 1992, hemodialysis, intranasal cocaine use, high-risk sexual activity, accidental exposure while a health care worker, and various kinds of percutaneous exposure such as tattoos, body piercing, acupuncture with non-sterile needles, and shared toothbrushes or razor blades. See VBA Fast Letter 98-110 (Nov. 30, 1998).
In a July 2003 rating decision, the RO, in pertinent part, denied service connection for PTSD for no clear diagnosis of PTSD and no evidence of record linking any psychiatric disability to service (no nexus). In a September 2007 rating decision, the RO, in pertinent part, denied service connection hepatitis C, finding no evidence of record linking any liver disorder to service. The Veteran did not submit a timely NOD to either the July 2003 or September 2007 rating decision, and no new and material evidence was received during the one year appeal periods; thus the July 2003 and September 2007 rating decisions denying service connection for PTSD and hepatitis C became final as to the evidence then of record, and are not subject to revision on the same factual basis. See 38 U.S.C.A. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

Since the July 2003 and September 2007 rating decisions, VA has received June 2010 and July 2017 statements, in which the Veteran discussed various claimed in-service stressors. VA has also received an April 2014 VA treatment record that includes a diagnosis of PTSD. Further, at the January 2017 Board hearing, the Veteran testified to in-service intravenous drug use. Such evidence could reasonably substantiate the issues of service connection for an acquired psychiatric disability and hepatitis C, and, at the very least, such evidence, when considered with the other evidence of record, triggers the VA Secretary's duty to assist. As such, the new evidence meets the low reopening standard of Shade. For these reasons, the Board finds that the additional evidence is new and material to reopen service connection for PTSD and service connection for hepatitis C. 38 C.F.R. § 3.156(a). 

Service Connection Legal Criteria 

As discussed above, service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

The Veteran is currently diagnosed with PTSD, depression, a substance abuse disorder, hepatitis C, headaches, and bilateral dry eyes, which are not "chronic diseases" under 38 C.F.R. § 3.309 (a); therefore, the Board finds that the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service are not applicable to these disabilities. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). The Veteran is also not diagnosed with glaucoma. 

The diagnosed hypertension is a "chronic disease" under 38 C.F.R. § 3.309(a). Cardiovascular-renal diseases, to include hypertension, are recognized by VA as "chronic diseases." See 38 C.F.R. § 3.309(a). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b); Walker, 
708 F.3d 1331. As the Veteran in the present case has been diagnosed with hypertension, this presumption is applicable to the pending appeal. 

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, such as hypertension, become manifest to a degree of 
ten percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 

In rendering a decision on appeal the Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 
39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 
10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. at 303. Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). A veteran as a lay person is competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (citing Jandreau, 492 F.3d at 1372).

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 
186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The United States Court of Appeals for Veterans Claims (Court) has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection for Acquired Psychiatric Disorder

As discussed above, service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a). If the evidence establishes a diagnosis of PTSD during service and the claimed stressor is related to that service, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor.

The question of whether a veteran was exposed to a stressor in service is a factual one, and VA adjudicators are not bound to accept uncorroborated accounts of stressors or medical opinions based upon such accounts. Wood v. Derwinski, 1 Vet. App. 1991 (1991), aff'd on reconsideration, 1 Vet. App. 406 (1991). Hence, whether a stressor was of sufficient gravity to cause or support a diagnosis of PTSD is a question of fact for medical professionals, and whether the evidence establishes the occurrence of stressors is a question of fact for adjudicators.

The Veteran contends generally that PTSD developed as a result of stressful, traumatic experiences while in service. Specifically, June 2006, June 2010, and July 2014 statements reflect that the Veteran wrote that he witnessed Sergeant R. commit suicide during service. The June 2010 statement also reflects that the Veteran wrote that his best friend was mysteriously killed during service. 

First, the Board finds that the supports a finding of currently diagnosed PTSD with related depressive symptoms as reflected in various VA treatment records. 

After a review of all the evidence, lay and medical, the Board finds that the Veteran did not sustain an injury or event related to an acquired psychiatric disorder during service, and the claimed stressors are not related to fear of hostile military or terrorist activity. June 2006, June 2010, and July 2014 statements reflect that the Veteran wrote that he witnessed Sergeant R. commit suicide. The June 2010 statement also reflects that the Veteran wrote that his best friend was mysteriously killed when he fell from a window during service. In October 2013, the Joint Service Records Research Center (JSRRC) issued a formal finding of a lack of information required to verify an in-service stressor. 

Further, the Veteran has more recently provided inconsistent accounts of the alleged in-service stressor, and the inconsistencies in the Veteran's accounts over the course of the appeal are significant and unlikely to be the product of mere differences in the retelling of the same story. As discussed below, the Veteran specifically denied symptoms of PTSD in March 2003 post-service, and the evidence demonstrates a PTSD diagnosis in approximately 2007 (33 years after service separation). 

The evidence of record also reflects inconsistent accounts about the alleged in-service stressors. The June 2010 statement reflects that the Veteran wrote that his "best friend" was mysteriously killed when he fell from a window; however, the Veteran was unable to recall the name of the alleged best friend when testifying at the January 2017 Board hearing. Further, the June 2006, June 2010, and July 2014 statements reflect that the Veteran wrote that he witnessed Sergeant R. commit suicide during service; however, at the January 2017 Board hearing, the Veteran specifically denied witnessing the death of Sergeant R., and subsequently indicated that the Sergeant's alleged death was unrelated to suicide. See January 2017 Board hearing transcript. See Pond v. West, 12 Vet. App. 341 (1999) (although Board must take into consideration the veteran's statements, it may consider whether self-interest may be a factor in making such statements). For these reasons, the Board finds the Veteran's accounts of PTSD to be inconsistent with, and outweighed by, other lay and medical evidence of record, which includes the Veteran's own reported history of denying symptoms of PTSD and differing reports as to the cause of the purported Sergeant's death, so as not to be credible. 

Similarly, after reviewing all the lay and medical evidence of record, the Board finds that the weight of the evidence is against a finding that there was a psychiatric injury or psychiatric disease during active service. Service treatment records are absent for any complaint of psychiatric symptoms during service, and the November 1974 service separation examination report shows a normal psychiatric evaluation. Similarly, psychiatric symptoms would have ordinarily been recorded during service had they occurred. As noted above, the November 1974 service separation examination shows a normal psychiatric evaluation and the concurrent report of medical history, completed by the Veteran, reflects that the Veteran denied depression or excessive worry, nervous trouble of any sort, frequent trouble sleeping, frequent or terrifying nightmares, and loss of memory or amnesia; therefore, the complete service treatment records, which were generated contemporaneous to service, are likely to accurately reflect the Veteran's physical condition, so are of significant probative value. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (stating that VA may use silence in the service treatment records as evidence contradictory to a veteran's assertions if the service treatment records appear to be complete and the injury, disease, or symptoms involved would ordinarily have been recorded had they occurred) (Lance, J., concurring); Cf. AZ v. Shinseki, 731 F.3d 1303, 1315-18 (Fed. Cir. 2013) (recognizing and applying the rule that the absence of a notation in a record may be considered if it is first shown both that the record is complete and also that the fact would have been recorded had it occurred, although holding that a veteran's failure to report an in-service sexual assault to military authorities may not be considered as relevant evidence tending to prove that a sexual assault did not occur because military sexual trauma is not a fact that is normally reported); Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (the absence of a notation in a record may only be considered if it is first shown both that the record is complete and also that the fact would have been recorded had it occurred); see also Fed. R. Evid. 803(7) (indicating that the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded).

The Board finds that the Veteran's in-service history of symptoms (i.e., seeking treatment for disorders other than a psychiatric disorder during service and denying any psychiatric complaints at service separation) is more contemporaneous to service, so is of more probative value, than the more recent assertions made many years after service separation. See Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (upholding a Board decision assigning more probative value to a contemporaneous medical record report of cause of a fall than subsequent lay statements asserting different etiology); Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (upholding Board decision giving higher probative value to a contemporaneous letter the veteran wrote during treatment than to his subsequent assertion years later); Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"); Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (upholding Board's finding that a veteran was not credible because lay evidence about a wound in service was internally inconsistent with other lay statements that he had not received any wounds in service). The contemporaneous service treatment records do not reflect complaints, diagnoses, or treatment of an acquired psychiatric disorder, including psychiatric symptoms, during service. 

The weight of the lay and medical evidence also shows no psychiatric symptoms or diagnosis until several years after service separation. The post-service evidence shows a psychiatric diagnosis of depressive disorder in approximately 2003, nearly 29 years after service separation, and a PTSD diagnoses in June 2007, approximately 33 years after service. See, e.g., March 2003 VA treatment record (reflecting the Veteran denied symptoms of PTSD); see also April 2014 VA treatment record. The twenty-nine year period, at the earliest, between service separation in 1974 and a depressive disorder diagnosis in 2003 is one factor -- considered with other factors in this case that include absence of psychiatric injury, disease, or symptoms in service, and a history psychiatric treatment that only dates to post-service onset -- that weighs against service connection. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (the passage of many years between discharge from active service and the medical complaint of a claimed disability is one factor to consider as beyond medical evidence against a claim of service connection). For these reasons, the Board finds that the weight of the lay and medical evidence is against a finding that the Veteran experienced an in-service injury, disease, or event related to an acquired psychiatric disorder. 

The Board also finds the weight of evidence is against finding a link or nexus between the current acquired psychiatric disorder and active service. Although the Veteran, as a lay person, is competent to report most psychiatric symptoms he has experienced at any given time, as well as a contemporaneous diagnosis by a medical provider, under the facts of this case that include no in-service stressful event or symptoms and no symptoms in service or following service, he is not competent to diagnose a psychiatric disability because a psychiatric diagnosis requires medical expertise and falls outside the realm of common knowledge of a lay person. See Young v. McDonald, 766 F.3d 1348, 1353 (Fed. Cir. 2014) (holding that "PTSD is not the type of medical condition that lay evidence . . . is competent and sufficient to identify"). The DSM-IV cautions that the "proper use of these criteria requires specialized clinical training that provides both a body of knowledge and clinical skills." The "purpose of DSM-IV is to provide clear descriptions of diagnostic categories in order to enable clinicians and investigators to diagnose" various mental disorders. The weight of the evidence shows that symptoms of an acquired psychiatric disorder were not manifested until approximately three decades after service separation. Consequently, the Veteran's purported opinion attributing the current psychiatric symptoms to a psychiatric diagnosis claimed to be related to service is further outweighed by the lay and medical evidence of record showing no psychiatric symptoms, diagnosis, or treatment for many years after service separation, and showing no link between the current psychiatric diagnosis and service. 

For these reasons, the Board finds that a preponderance of the evidence is against the claim for service connection for an acquired psychiatric disorder, to include PTSD and depressive disorder, and the claim must be denied. Because the preponderance of evidence is against the claim, the benefit of the doubt doctrine is not applicable. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

Service Connection for Hypertension

The Veteran contends generally that hypertension is due to service. Specifically, the Veteran testified as to having high blood pressure during service. See January 2017 Board hearing transcript. 

Initially, the Board finds that the Veteran is currently diagnosed with hypertension, as numerous VA treatment records reflect such a diagnosis. 

After a review of all the evidence, both lay and medical, the Board finds that no cardiovascular injury, disease, or chronic symptoms of hypertension occurred during service or were manifested during service. Service treatment records make no mention of treatment for symptoms of hypertension. The October 1974 report of medical history, immediately prior to service separation, reflects the Veteran denied medical problems, to include checking "no" when asked if he had suffered from heart trouble or high or low blood pressure. Further, the Veteran denied taking any blood pressure medication during service. See January 2017 Board hearing transcript. 

The Board finds that the relevant service treatment records, which are complete, reflect that the Veteran was treated for other symptoms, injuries, and disorders during service for which he did seek treatment; however, the service treatment records do not include any complaints, symptoms, such as elevated blood pressure readings, or treatment. The Veteran presented for treatment of multiple other conditions throughout service including a mild cough in November 1972 and a knee injury in April 1974. Thus, in consideration of the other evidence included in the service treatment records showing complaints and treatment for various disorders, to include mild cough in November 1972 and a knee injury in April 1974, and because blood pressure was recorded during various times in service, it is likely that any complaints, symptoms, or treatment for hypertension would have been mentioned and/or detected during service. See Kahana at 437; see also Buczynski at 224. 

The Board next finds that the evidence shows that symptoms of hypertension were not continuous since service, including not to a degree of ten percent within one year of service separation. See 38 C.F.R. § 4.104, Diagnostic Code 7101 (2016). Review of the Veteran's post-service treatment records, including numerous VA treatment records, show that hypertension was first diagnosed in approximately the early 2000s, at the latest. See January 2011 VA examination report. 

The Veteran does not contend that his hypertension manifested to a compensable degree during the first post-service year. Additionally, as stated above, the evidence does not otherwise show manifestations of hypertension to a degree of ten percent within one year of service separation; therefore, the Board finds that, because hypertension was not manifested to a degree of ten percent within one year of service separation, there is no basis for presumptive service connection. 
38 C.F.R. §§ 3.307, 3.309.

Further, the weight of the evidence also shows that the hypertension, which manifested many years after service, is not otherwise causally or etiologically related to service. As stated above, the weight of the evidence shows no cardiovascular symptoms, including hypertension, during service, and the earliest evidence of a hypertension diagnosis is not shown until the early 2000s, approximately 26 years after service separation. The evidence shows that the 26-year period between service separation in 1974 and a hypertension diagnosis in the early 2000s is one factor, considered with other factors in this case, that includes a history of treatment that dates to post-service onset, which weighs against service connection. See Buchanan, 451 F.3d at 1336 (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible); see also Maxson at 1333. For these reasons, the Board finds that the weight of the evidence is against a finding that the Veteran experienced any cardiovascular in-service injury, disease, or event related to hypertension.
The Board also finds that, while the Veteran, as a lay person, is competent to report some symptoms of hypertension that he experiences at any time, under the facts of this case that include no chronic symptoms of hypertension in service and no continuous symptoms of hypertension after service, he has not been shown to have the requisite medical knowledge, training, or experience to be able to render a competent medical opinion regarding whether hypertension (a vascular disorder) was caused by service. Additionally, an opinion of etiology would require knowledge of the complexities of the cardiovascular system, the various causes of unobservable symptoms of hypertension, and would involve objective clinical testing that the Veteran is not competent to perform. The Veteran's statements purportedly attributing current hypertension to service are further outweighed by the lay and medical evidence of record showing no hypertension symptoms, diagnosis, or treatment until approximately 26 years after separation from service. Further, the January 2017 Board hearing transcript reflects that the Veteran testified that his physicians have attributed hypertension to a history of drug abuse, which, as discussed below, is willful misconduct. 

For these reasons, the Board finds that the weight of the lay and medical evidence shows that the hypertension disability was not incurred in service, is not otherwise related to service, and may not be presumed to have been incurred in service. As such, service connection for hypertension is not warranted. See 38 U.S.C.A. 
§ 5107; 38 C.F.R. § 3.102. 

Service Connection for Substance Abuse 

With respect to claims filed after October 31, 1990, an injury or disease incurred during active service will not be deemed to have been incurred in the line of duty if the injury or disease was a result of the person's own willful misconduct, including abuse of alcohol or drugs. 38 U.S.C.A. § 105; 38 C.F.R. §§ 3.1(m), 3.301(c)(3)(d). The isolated and infrequent use of drugs by itself will not be considered willful misconduct; however, the progressive and frequent use of drugs or alcohol to the point of addiction will be considered willful misconduct. Where drugs are used to enjoy or experience their effects and the effects result proximately and immediately in disability or death, such disability or death will be considered the result of the person's willful misconduct. 38 C.F.R. § 3.301(c)(3). 

Alcohol and drug-related disorders are also recognized as disorders within the medical community. See American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (4th. Ed. 1994) (DSM-IV). Moreover, while service connection for alcohol and drug abuse disabilities on a primary basis is barred, an alcohol and/or drug abuse disability arising as a direct result of a psychiatric condition may be service connected. Allen v. Principi, 237 F.3d 1368 (Fed. Cir. 2001) (interpreting 38 U.S.C.A. § 1110). In Allen, overruling Barela v. West, 11 Vet. App. 280 (1998), the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that veterans can recover for an alcohol or drug abuse disability secondary to a service-connected disability if they can adequately establish that their alcohol or drug abuse disability is secondary to or is caused by their primary service-connected disability. Compensation would only result where there is clear medical evidence establishing that the alcohol or drug abuse disability is indeed caused by a veteran's primary service-connected disability. The Allen case primarily concerns situations where a veteran has a service-connected psychiatric disorder and is attempting to receive additional compensation, etc., for his alcohol and/or drug abuse on the premise that it is proximately due to or the result of his service-connected psychiatric disability.

The Veteran contends that generally that a substance abuse disorder is due to service. At the January 2017 Board hearing, the Veteran testified to enjoying the use of drugs throughout service, to include heroin, and denied seeking drug treatment during service. The Veteran also testified that he used drugs in secret throughout service. See January 2017 Board hearing. 

Various VA treatment records reflect that the Veteran has been diagnosed with a substance abuse disorder, to include cocaine and heroin dependence. See April 2014 VA treatment record. 

Service treatment records do not reflect any complaints, treatment, or symptoms of a substance abuse disorder. The November 1974 service separation examination reflects the Veteran was clinically evaluated as normal, and, as discussed above, the Board has found that the service treatment records are complete. 

An April 2014 VA treatment record reflects the Veteran reported first using intravenous heroin at the age of 14. The Veteran also reported first using cocaine at the age of 15. See April 2014 VA treatment record. A May 2015 VA treatment record reflects the Veteran reported last using heroin in April 2014, approximately 40 years post-service. 

The January 2017 Board hearing transcript reflects that the Veteran testified that he began using drugs during service, and that he enjoyed using drugs in secret throughout service, to include heroin, for which, even if misconduct, he cannot receive service connection for as a matter of law. See 38 U.S.C.A. § 105; 38 C.F.R. § 3.301; see also January 2017 Board hearing transcript. 

The Board finds that the weight of the evidence demonstrates illegal drug use, including heroin and cocaine, pre-service (beginning at the age of 15, at the latest), during service (for approximately two years), and for approximately four decades post-service; therefore, the Veteran's repeated in-service and post-service illegal substance abuse constitutes willful misconduct, and service connection cannot be established. 38 U.S.C.A. § 105 ;38 C.F.R. § 3.301. 

In addition, there is no allegation or evidence that the Veteran's substance abuse was acquired secondary to a service-connected disability. The only service-connected disability is tinnitus, and the instant decision denies service connection for an acquired psychiatric disorder, hypertension, hepatitis C, a bilateral eye disorder, headaches, and the claimed right ear hearing loss. As such, the Board finds that service connection for substance abuse must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994); see also 38 U.S.C.A. § 7104 (West 2014) (providing that the Board decides only actual questions of fact or law in a case). 



Service Connection for Hepatitis C 

As discussed above, to support a finding that the Veteran contracted hepatitis C in service, it must be shown that he or she was exposed to one of the medically recognized risk factors for contracting hepatitis C during that time. See VBA Fast Letter 98-110 (Nov. 30, 1998).

The Veteran contends generally that hepatitis C is due to service. Specifically, in an August 2006 statement, the Veteran wrote that hepatitis C was due to eating from a "mess kit" during service. At the January 2017 Board hearing, the Veteran testified to in-service intravenous drug use, and that he did not know how he had contracted hepatitis C. 

Initially, the Board finds that the Veteran has a current diagnosis of hepatitis C. A January 2011 VA examination report reflects a current diagnosis of hepatitis C. 

Next, upon review of the lay and medical evidence of record, the Board finds that certain risk factors of hepatitis C, namely intravenous drug use and/or intranasal cocaine use, were present in service, although such risk factors in service were minimal in comparison to the overwhelming pre-service (years) and post-service (decades) exposure to such risk factors. As discussed above, the Veteran's history of substance abuse predated military service, to include the use of intravenous drugs and intranasal cocaine, and persisted decades after separation from service, including close in time to the diagnosis of hepatitis C. See April 2014 VA treatment record (reflecting that the Veteran reported first using heroin and cocaine at the age of 14 and 15, respectively, and last using cocaine in April 2014, approximately four decades post-service). 

The Board also finds that the weight of the evidence demonstrates that the current hepatitis C is not related to the risk factors that were present during service. While the Veteran testified to consuming intravenous drugs and/or intranasal cocaine during the two year period of active service, which are risk factors for contracting hepatitis C, this was only for two years versus years of pre-service and decades post-service of the same drug abuse; thus, the hepatitis C is not related to the in-service risk factors by the weight of the evidence, which consists of overwhelming pre-service and decades of post-service risk factors. Further, as discussed above, the Veteran's in-service drug use was willful misconduct. The Veteran has admitted that he had both in service and post-service drug usage; therefore the Veteran is barred from establishing service connection for hepatitis C due to in-service drug use. See 38 U.S.C.A. § 105; 38 C.F.R. § 3.301.

The evidence of record also does not reflect any other in-service injury, disease, risk factors, or symptoms of hepatitis C present in service. Service treatment records do not show any history or reports of hepatitis C risk factors during service, or any other notations to suggest hepatitis C risk factors during service. Service treatment records do not indicate blood transfusions, hemodialysis, high-risk sexual activity, accidental exposure working as a health care worker, or percutaneous exposure, and the Veteran has not alleged otherwise. The post-service evidence shows a hepatitis C diagnosis in approximately 1998, nearly twenty-four years after service separation. The twenty-four-year period between service separation in 1974 and a hepatitis diagnosis in 1998 is one factor -- considered with other factors in this case that include absence of a history or reports of hepatitis C risk factors during service and a history treatment that only dates to post-service onset -- that weighs against service connection. See Buchanan at 1336; see also Maxson at 1333. Additionally, in the August 2006 statement, the Veteran wrote that hepatitis C was due to eating a "mess kit" during service, which is not a risk factor for hepatitis C, and no other evidence of record suggests that eating food from a mess kit has any probability of causing hepatitis C. 

For these reasons, the Board finds that a preponderance of the lay and medical evidence that is of record weighs against the claim for service connection for hepatitis C. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.




Service Connection for Headaches and Bilateral Eye Disorder 

The Veteran contends that the current headaches and bilateral eye disorder had their onset during service and have continued since service. At the January 2017 Board hearing, the Veteran testified that headaches and a bilateral eye disorder were caused by shooting an M-16 rifle during service. 

First, the evidence of record demonstrates that the Veteran has currently diagnosed headaches and bilateral dry eyes. See January 2011 VA examination report; see also Hampton VA Medical Center records. 

After review of the lay and medical evidence, the Board finds that the weight of the evidence is against finding that headaches and a right or left eye disorder had its onset in service or are otherwise causally or etiologically related to service. Review of the service treatment records does not reveal any notations, complaints, or diagnosis of headaches or an eye disorder or symptoms of a neurological or eye disability. 

The Board finds that the weight of the evidence demonstrates that there was no relevant in-service neurological, head, or eye injury or disease or even symptoms of such headache or eye disorders during service. Service treatment records do not reflect any complaints, treatment, or symptoms of an eye or neurological disease/ headache disorder. The November 1974 service separation examination reflects the Veteran was clinically evaluated as normal, to include the eyes, the neurological system, and headaches. On an associated reported of medical history, the Veteran denied both frequent or severe headaches and eye trouble. 

Similarly, as discussed above, the service treatment records, which are complete, reflect that the Veteran was treated for other injuries and disorders during service, of which he did complain and seek treatment, though he did not report any such related problems or symptoms regarding the eye or headaches. Such in-service complaints reported or treatment sought by the Veteran includes a mild cough and a knee injury. As such, the complete service treatment records in this case, which were generated contemporaneous to service, are likely to accurately reflect the Veteran's physical condition, so are of significant probative value, especially because the Veteran was treated on multiple occasions for the complaints or disorders listed above, so would have reflected any complaints or treatment for headaches or an eye disorder had such occurred during service. See Kahana at 437; see also Buczynski at 224. 

Next, the Veteran has submitted several statements indicating that symptoms of headaches and a bilateral eye disorder began during service. The Veteran is competent to report experiencing symptoms of headaches or an eye disorder during and since service; however, Board finds that the Veteran's recent statements made for compensation asserting symptoms of headaches and an eye disorder during service are inconsistent with, and outweighed by, other, more contemporaneous lay and medical evidence of record, so are not credible. 

As discussed above, there is no indication from the service treatment records that the Veteran experienced any symptoms of headaches or a bilateral eye disorder during service. Chronic headaches and a bilateral eye disorder during service is a fact that, had it occurred, would have been recorded in the service treatment records. Given this competing evidence, the Board attributes more probative weight to the specific, contemporaneous service treatment record evidences than to the Veteran's more recent statements made pursuant to the current claim for compensation asserting headaches and a bilateral eye disorder during service. See Curry v. Brown, 7 Vet. App. 59 (1994) (noting that contemporaneous evidence has greater probative value than history as reported by the veteran). Thus, on review of all the evidence, lay and medical, the Board finds the weight of the evidence demonstrates there was no in-service headache or eye injury or disease. 

Regarding the theory of direct service connection, the Board finds that the headaches and bilateral eye disorder are not related to an in-service injury or disease because the weight of the evidence demonstrates no in-service injury or disease or even event to which headaches or an eye disorder could be related. As discussed above, while the Veteran contends that headaches and dry eyes are related to exposure to gunfire, service treatment records reflect no injury or disease to the neurological system, headache symptoms, or eyes. Significantly, the January 2011 VA examiner attributed the headache disorder to the Veteran's long history of drug abuse. See January 2011 VA examination report. 

The Board has also considered the Veteran's contentions that headaches and the bilateral eye disorder were caused by exposure to gunfire; however, as discussed above, the Veteran is a lay person who under the specific facts of this case, does not have the requisite medical training or credentials to be able to render a competent medical opinion regarding the cause of the headaches and bilateral eye disorder. The etiology of the headaches and bilateral eye disorder are complex medical etiological questions dealing with the origin and progression of the neurological and eye systems, and are diagnosed in part on clinical findings and physiological testing, in addition to symptoms such as headache pain and dry eyes. Thus, while the Veteran is competent to report headaches and dry eyes experienced at any time, under the facts of this case, he is not competent to opine as to whether there is a link between the current headaches and service. See Kahana, 24 Vet. App. at 438. In addition, as discussed above, the January 2011 VA examiner attributed headache disorder to the Veteran's long history of drug abuse.

For these reasons, the Board finds that a preponderance of the evidence is against the claim for service connection for headaches and a bilateral eye disorder. Because the preponderance of evidence is against the claim, the benefit of the doubt doctrine is not applicable. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

Service Connection for Right Ear Hearing Loss

The Veteran does not have a hearing loss disability as defined by VA regulatory criteria. For VA purposes, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater, the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, and 4000 Hz are 26 dB or greater, 

or speech recognition scores using the Maryland CNC Test are less than 94 percent. 
38 C.F.R. § 3.385. Additionally, the Court has held that "the threshold for normal hearing is from 0 to 20 dBs [decibels], and higher threshold levels indicate some degree of hearing loss." See Hensley v. Brown, 5 Vet. App. 155, 157 (1993).
The Veteran contends that service connection is warranted for right ear hearing loss resulting from in-service noise exposure. Specifically, at the January 2017 Board hearing, the Veteran testified to various in-service noise exposures as, including gunfire. 

Initially, the Board finds that the Veteran experienced in-service acoustic trauma. As detailed above, the Veteran has reported exposure to acoustic trauma from various loud noise exposures during service, including gunfire. The Veteran is competent to report noise exposure in service. See Bennett v. Brown, 10 Vet. App. 178 (1997) (the Board may rely upon lay testimony as to observable facts). The Board finds the Veteran's account of in-service noise exposure to be credible and consistent with the places, types, and circumstances of his service. 38 U.S.C.A. 
§ 1154(a). See DD Form 214 (reflecting field artillery). Accordingly, the Board finds that the Veteran was exposed to acoustic trauma during service.

The Veteran attended a July 2015 VA audiometric examination. At the July 2015 VA audiometric examination, right ear pure tone thresholds, in decibels, were recorded as follows:



HERTZ



1000
2000
3000
4000
RIGHT
25
25
25
25

Speech recognition scores using the Maryland CNC Test revealed right ear speech discrimination of 96 percent. See July 2015 VA audiometric examination report. 


The Board finds that the weight of the evidence shows that the Veteran does not have a current right ear hearing loss disability as defined by the VA regulatory criteria at 38 C.F.R. § 3.385. At the July 2015 VA audiometric examination, speech discrimination for the right ear was 96 percent. There is no indication that that the auditory thresholds from the July 2015 VA audiometric examination, which shows that right ear hearing that is not to the disability threshold of § 38 C.F.R. § 3.385, is unreliable or otherwise inadequate. For these reasons, the Board finds that that the weight of the evidence shows that the Veteran does not have a current right ear hearing loss disability as defined by the VA regulatory criteria at 38 C.F.R. § 3.385. 

In evaluating a service connection claim, evidence of a current disability is an essential element, and, where not present, the claim under consideration cannot be substantiated. See Moore v. Nicholson, 21 Vet. App. 211, 215 (2007), citing Francisco v. Brown, 7 Vet. App. 55, 58 (1994) ("Compensation for service-connected injury is limited to those claims which show a present disability"). The Court has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992). See also McClain v. Nicholson, 21 Vet. App. 319 (2007) (service connection may be warranted if there was a disability present at any point during the claim period, even if it is not currently present); Romanowsky v. Shinseki, 
26 Vet. App. 289 (2013) (when the record contains a recent diagnosis of disability immediately prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its 

pendency). Because a right ear hearing loss disability as defined by the VA regulatory criteria at 38 C.F.R. § 3.385 is not demonstrated in this case, service connection is not warranted for right ear hearing loss. 38 U.S.C.A. § 5107; 
38 C.F.R. § 3.102.


ORDER

New and material evidence having been received, the appeal to reopen service connection for PTSD is granted. 

New and material evidence having been received, the appeal to reopen service connection for hepatitis C is granted. 

Service connection for an acquired psychiatric disorder, to include PTSD and depression, is denied. 

Service connection for hypertension is denied. 
Service connection for substance abuse is denied. 

Service connection for hepatitis C is denied.

Service connection for headaches is denied. 

Service connection for a right eye disorder is denied. 

Service connection for a left eye disorder is denied. 

Service connection for right ear hearing loss is denied. 





____________________________________________
J. Parker 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs